UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN L. JOHNSON, K JOHNSON ENTERPRISES, LLC, K JOHNSON URBAN RENEWAL, LLC, TEAM85 FITNESS AND WELLNESS, LLC, TEAM CAMPUS PHASE II, LLC, TEAM CAMPUS SENIOR LUXURY APARTMENTS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>TOWNSHIP OF BORDENTOWN, FRANK NUCERA, JR., COLLEEN M. ECKERT, GEORGE HAEUBER, DAVID KOCIAN, MICHAEL THEOKAS, Individuals 1 through 10, such names being fictitious, Corporations A through J, such names being fictitious.<br><br>Defendants. | Civil Action No.: 1:20-CV-12478<br><br>CIVIL ACTION<br><br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL |

Plaintiffs, Kevin L. Johnson, K Johnson Enterprises, LLC, K Johnson Urban Renewal, LLC, Team85 Fitness and Wellness, LLC and Team Campus Phase II, LLC and Team Campus Senior Luxury Apartments, LLC by way of Complaint against Defendants, Township of Bordentown, Frank Nucera, Jr., Colleen M. Eckert, George Haeuber, David Kocian, Michael Theokas, Individuals 1 through 10, such names being fictitious, and Corporations A through J, such names being fictitious do hereby say:

## INTRODUCTION

1. Kevin Johnson is the type of businessman that any community would be lucky to have. He is passionate about improving his community. He has tremendous vision. And he has the resources to bring his vision to life. So when he purchased property along U.S. Route 130 in Bordentown Township, New Jersey that had long laid unused and contained the unsafe remnants of a defunct agricultural operation, he assumed that his vision to develop a mixed-use project that would bring residential units, recreational facilities, office space, and first-class medical facilities would be warmly received.

2. He was wrong. For the better part of a decade, Mr. Johnson has been locked in a never-ending battle to develop his property on reasonable terms. And it is not like Bordentown is opposed to development. During the decade that Mr. Johnson has fought Bordentown, several developments of varying sizes breezed through the approval process. In the eyes of Bordentown's decision makers, there was a single, immutable difference between Mr. Johnson and all of those other developers: He is an African-American developer and the others were not.

3. That was a problem for the people controlling Bordentown because they believed "[t]hese n[*****]s are like ISIS, they have no value. They should line them all up and mow 'em down." They casually "used the word 'n[*]g'" as "a joke" to refer to African-Americans. And, tellingly, they believed that African-Americans should "stay the f[**]k out of Bordentown." In service of that goal, they have made Mr. Johnson's development process as difficult as possible for a decade. This Action

seeks to hold the parties and Bordentown to account for their myriad violations of the law.

## JURISDICTION AND VENUE

4. Jurisdiction over the Plaintiffs' claims is conferred on this Court by 28 U.S.C.§ 1331 because this Action arises under the Constitution and laws of the United States; 28 U.S.C. § 1343(a)(4) because Plaintiffs seek equitable and other relief under Acts of Congress providing for the protection of civil rights under 42 U.S.C. § 1983, which provides redress for the deprivation, under color of state law, of rights, privileges and immunities secured to all citizens and persons within the jurisdiction of the United States by the Constitution and laws of the United States.

5. Plaintiffs seek declaratory and injunctive relief against the Defendants pursuant to 28 U.S.C. §§ 2201 and 2202 and injunctive relief pursuant to 42 U.S.C. § 3613(c)(1).

6. 28 U.S.C. § 1367 confers supplemental jurisdiction on this court over Plaintiffs' related claims under state law.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants all reside and/or do substantial business in this judicial district; the events or omissions giving rise to Plaintiffs' claims arose in this district; and the real property at issue is situated in this judicial district.

## PARTIES

### I.   Plaintiffs

8. Kevin L. Johnson is a New Jersey resident with an address of 9500 KJohnson Boulevard, Bordentown, New Jersey 08505.

9. KJohnson Enterprises is a limited liability company organized and existing in the State of New Jersey with a principal place of business located at 9500 KJohnson Boulevard, Bordentown, New Jersey 08505.

10. K Johnson Urban Renewal, LLC is a limited liability company organized and existing in the State of New Jersey with a principal place of business located at 9500 KJohnson Boulevard, Bordentown, New Jersey 08505.

11. Team Campus Phase II, LLC is a limited liability company organized and existing in the State of New Jersey with a principal place of business located at 9500 KJohnson Boulevard, Bordentown, New Jersey 08505.

12. Team85 Fitness and Wellness, LLC is a limited liability company organized and existing in the State of New Jersey with a principal place of business located at 8500 KJohnson Boulevard, Bordentown, New Jersey 08505.

13. Team Campus Senior Luxury Apartments, LLC is a limited liability company organized and existing in the State of New Jersey with a principal place of business located at 9500 KJohnson Boulevard, Bordentown, New Jersey 08505.

14. Kevin Johns is the sole member or the sole member's sole member of all of the juridical plaintiffs.

## II. Defendants

15. Bordentown Township – Bordentown Township is a township in Burlington County that was created by an act of the New Jersey Legislature on March 8, 1852.

16. Frank Nucera, Jr. – from 2010 through January 2017, Frank Nucera, Jr. was the Deputy Chief of Police, Acting Director of Community Development and Co-Township Administrator of Bordentown Township.

17. Colleen M. Eckert – from 2010 until October 9, 2018, Colleen M. Eckert was the Township Clerk and Co-Township Administrator.

18. George Haeuber – from January 2017 until May 2017, George Haeuber was the Interim Bordentown Township Administrator.

19. Michael Theokas – from June 2017 to Present, Michael Theokas was the Township Administrator.

20. David Kocian – from January 2010 to May 2017 David Kocian was the former Township Chief Finance Officer and Co-Township administrator.

21. Fictitious Parties – the fictitious parties are those who participated in the conspiracy to deprive the Plaintiffs or their rights, as set forth herein.

## STATEMENT OF FACTS

### I. Mr. Johnson Purchases Properties Along Route 130 In Bordentown, New Jersey

22. On or around 2007, Mr. Johnson, through K Johnson Enterprises, LLC, began working with Growmark FS on a joint venture to develop property at that time owned by Growmark, and shown on Bordentown's tax maps as the following

blocks and lots; Block 57, Lot 6.01 and 6.02 (the properties were eventually merged and are now known as Block 57, Lot 6) (the "Property").

23. The Property, among others, were zoned as an area in need of redevelopment by the Township of Bordentown. A Redevelopment Plan dated October 2007 designated the following as permitted uses:

   a. Retail sales of goods and services;

   b. Garden centers engaged in the retail sales of living plant material and related garden equipment, vegetation and produce. Outside areas for [the] storage, sale and display [of living plant material] shall conform to all bulk and design requirements for the zone.

   c. Banks, including drive-in facilities.

   d. Offices and office buildings

   e. Restaurants, bars and taverns

   f. Health clubs, bowling alleys, skating rinks and other similar indoor recreational activities.

   g. Legitimate theaters

   h. Public Utilities Uses as Conditional Uses subject to the requirements of Section 25:601 of the township ordinance.

   i. Clubs, fraternal organizations, and lodges which are non-profit uses established for charitable and/or civic purposes.

    j. Childcare centers for which, upon completion, a license is required from the Department of Human Services pursuant to N.J.S.A. 30:5B-1 et. seq.

    k. Warehousing and manufacturing of farm grade fertilizer and grains.

    l. Uses supportive of the agricultural industry such as packaging, processing, shipping facilities, nurseries, and garden centers.

    m. Indoor/outdoor sports fields to be used for group or individual training. The filed may be enclosed in a structurally sound structure using light-weight fabric polymer or air-cell paneling supported by strong light-weight metal, polymer or wood framing.

    n. Wastewater treatment facilities.

    o. Telecommunications towers.

    p. Medical Offices

    q. Hospitals

    r. Same Day Surgery Centers

    s. Mixed uses of any of the above.

24. On June 23, 2008, the Township and K Johnson Urban Renewal, LLC ("KJUR"), qualified as an urban renewal entity under the provisions of the New Jersey Long Term Tax Exemption Law, N.J.S.A. §§ 40A:20-1 to 22 (the "Tax Exemption Law"), entered into a Redevelopment Agreement, as amended on June 29, 2011 (the "Redevelopment Agreement"), whereby KJUR, agreed, among other things, to develop the Property in accordance with the Redevelopment Plan.

25. KJUR obtained approval from the Planning Board and the Township to redevelop the subject Property by constructing directly, or through its ground lessees, certain improvements in accordance with the Resolution of Site Plan Approval adopted by the Planning Board of Bordentown Township on June 12, 2008, by Resolution No. P-2008-14, as amended on March 12, 2009, by Resolution No. P-2009-10, on January 10, 2013, by Resolution No. P-2012-15, and on January 7, 2016, by Resolution P-2016-09 (collectively, the "Improvements" and together with the Property, the "Project").

26. Following the signing of the Redevelopment Agreement and the initial approvals in 2008 the actions of the Township and their desire to force Mr. Johnson out of the community became apparent.

27. Due to these difficulties with working with the Township, Growmark FS became discouraged by the difficulty in executing the Project, which was the fault of the Township of Bordentown and the administration and governing officials. Thus, Growmark offered to sell the Property to Kevin Johnson and end the Joint Venture.

28. Kevin Johnson agreed to purchase the Property but required site plan approval and the merging of the two (2) lots prior to purchase.

29. On September 7, 2011, Mr. Johnson through K Johnson Industries, LLC purchased Block 57, Lot 6.01.

30. On September 4 2012, after another year of delays caused by the Township of Bordentown, Mr. Johnson through K Johnson Urban Renewal, LLC., Purchased Block 57, Lot 6.02.

31. Still delays persisted and Mr. Johnson was required to merge both properties into one lot for a financial agreement to be executed. So on August 22, 2013, after the properties were merged, KJUR took ownership of the lot of properties now known as Block 57, Lot 6.

32. It was only after this entire process did the parties enter into a financial agreement for the redevelopment project, dated April 7, 2014, but required to be effective as of January 1, 2013. This entire process for approval took over seven (7) years.

33. Following the grant of approvals an individual from the Township offered to buy the Property and implicated that Mr. Johnson would continue to have difficulty gaining necessary approvals from the Township.

34. After one very difficult approval process in August of 2013, Jill Popko, the Former Mayor of the Township of Bordentown, asked Mr. Johnson if he thought race was a reason why he had such difficulty in this process. Mr. Johnson was shocked by this question and has never received a satisfactory answer as to why Ms. Popko posed this question.

35. The issues persisted throughout the development and ultimately caused delays of three (3) to four (4) years.

36. The conclusion of this Project did not eliminate or end the discriminatory practices.

37. To this date the Township still persists in violating signed agreements. As recently as July 13, 2020, the Township entered an amendment to the

Redevelopment Plan, over 340 days after it was supposed to be entered and without the approval of KJUR in direct violation of an agreement signed by the parties on March 11, 2019.

38. The Township has allowed its professionals to bill for services not permitted under the Municipal Land Use Law ("MLUL") and that were not even performed.

39. The Township purposefully made efforts to delay the opening of Team85 Fitness and Wellness, LLC for years. Costing Team85 Fitness and Wellness, LLC over $12 Million Dollars in revenue.

40. Some of the most egregious issues arose surrounding Mr. Johnson's purchase of property directly across the street from the Property, which are shown on the Bordentown Township Tax Map as Block 58, Lots 36 and 37.

41. In this process, Mr. Johnson presented to Mr. Nucera and Mr. Fred Turek a plan, where a portion of the property would be donated to the Township for a new municipal complex and the remaining property would be used by Mr. Johnson to create a mixed-use development with an affordable component.

42. Mr. Nucera and Mr. Turek after reviewing the plan and requesting that Mr. Johnson spend money to create a concept for the site, ultimately declined the offer. This would have been fine, however when Fair Share Housing Center sued the Township to provide affordable housing, the Township specifically excluded Mr. Johnson from participating in the discussion.

43. Mr. Johnson had to threaten a lawsuit to be able to build residential units on the site. The terms the Township, through Mr. Nucera and Mr. Turek offered, however, were discriminatory: while other sites only required 10-15% of the units to be affordable, Mr. Johnson was forced to include 25% affordable units, which had the consequence of making the project almost unaffordable to build.

44. Further, among many other issues in obtaining final approval for TCPII, prior to starting construction the Township initially refused to hear the application of Team Campus Phase II, LLC (a separate legal entity) for the planning board, because there were outstanding issues associated with KJUR. This was outright illegal and once being confronted, the Township again was forced to cease this action.

45. During the actual application for approval, TCPII was subject to four meetings for approval, including a hearing for completeness only, which had not been required by any application in the Township for over eight (8) years. This approval process, was by far more stringent than other applications that sailed through the Township without issue, some during this same approval period.

46. TCPII's application to subdivide the property was made into one of the most difficult components of the processes: it took over three (3) meetings and ultimately, the Township over billed the escrow account associated with this action by over $12,000.00 without explanation and in violation of the MLUL. They skirt and ignore the law in every instance. This action is subject to a state court action against the Planning Board.

47. TCSLA suffered similar discrimination. In its application it was evident that the Township placed requirements making the cost to build the project increase due to the inclusion of recreation areas that were never agreed upon. This was done despite the agreement and the law requiring that the Township not increase the costs for the building of affordable projects.

II. **Bordentown Makes Discriminatory Demands of Mr. Johnson**

48. In order to advance Mr. Johnson's developments, Bordentown made discriminatory demands of him.

49. The most obvious example of the disparate treatment is found when comparing a development on the Delaware River known as Rivergate Development Phase I and Phase II.

50. For that development, the township agreed to the formation of two-phased development, and on the second phase they permitted the construction of 333 units with only 18 affordable units or 5.4% of the units.

51. Even more absurd, the Township used tax payer money to bond the Rivergate Development improvements, first for $12,500,000.00 in 2011 and then increasing that amount to $19,150,000.00 in 2018.

52. The way the Township treated the Rivergate developer could not be more different from the way the Township treated Mr. Johnson:

    a. The Township never offered to bond Mr. Johnson's improvements;

    b. the Township claimed that 330+ units was too many for Mr. Johnson's development;

      c. the Township demanded a 25% affordable housing set-aside;

      d. the Township also made the project almost unbuildable when they required improvements, such as game tables and bocce ball courts.

53. Other egregious examples of discriminatory treatment include:

      e. when Over the Rainbow wanted to develop their property, it took a total of three meetings;

      f. when the Cook Subdivision came before the Township, they were offered the courtesy of an informal meeting, a courtesy that was repeatedly denied to Mr. Johnson;

      g. when David Schiavone and Matrix Realty were before the Township on separate applications, they were not even required to participate in a separate completeness hearing, which Mr. Johnson was required to do;

      h. when 237 Route 130 Convenience, LLC was before the Township, their application was approved in a total of three meetings in spite of vigorous opposition prosecuted by the law firm Sills Cummis & Gross, P.C.;

      i. when the Hogback Road subdivision came before the Township, it was not even required to produce reports from professionals, an accommodation unthinkable for Mr. Johnson.

### III. The Federal Government Exposes the Grotesque Racism of Bordentown's Leaders

54. Mr. Johnson wondered why his effort to bring high-value medical services, up-scale housing, and business redevelopment to an economically blighted area of Bordentown was met with such resistance.

55. In an indictment by the federal government of Bordentown's Frank Nucera, Jr., the Chief of Police, Township Administrator, and Acting Director of Community Affairs, the reasons were laid bare: the individuals controlling Bordentown were deeply racist.

56. The Township of Bordentown spend decades under the control of a triumvirate that included Frank Nucera, Jr., Colleen Eckert, and David Kocian.

57. Of those three, Nucera was described as having "absolute power" over "all areas" of Bordentown's government.

58. Specifically, he sat at all public meetings of both the Township Committee and the Planning Board and would exert his influence over those who sat on the boards of the Township.

59. Nucera and Eckert are irredeemable racists.

60. For example, Eckert admitted there she and Nucera referred to Mr. Johnson using a racial slur.

61. As a further example, Nucera exerted pressure on officers to not use Mr. Johnson's gym, which seemed to that officer as motivated by race.

62. The federal government quoted Nucera as stating "These n[*****]s are like ISIS, they have no value. They should line them all up and mow 'em down. I'd like to be on the firing squad, I could do it."

63. Nucera was further quoted as stating "I'm fucking tired of them man. I'll tell you what, it's gonna get to the point where I could shoot one of these motherfuckers. And that n[****]r bitch lady, she almost got it."

64. Eckert's own deep racism was on display when she stated, as if a mitigating factor, that when using racial slurs, she and Nucera "used the word 'n[*]g' not n[****]r."

65. Although she claimed to have used the slur in a joking manner, she "could not explain what the joke was…."

66. Of course she could not; the slur was not a joke, it was an expression of her racism.

67. Finally, although there is no evidence that Kocian actively participated in using racial slurs, he certainly did not object to those slurs being uttered in his presence.

68. Stunningly, the Township of Bordentown was well aware of Nucera's conduct, but did nothing to protect its citizens.

69. In spite of knowing of Nucera's racism, the Township of Bordentown permitted him to continue in positions in which he had substantial authority over Township residents, including its many People of Color.

70. By its conduct, the Township adopted Nucera's racism as its official policy, which has continued under the leadership of the successive

71. The years-long campaign against Mr. Johnson was clearly designed to make him choose between leaving the Township or bankrupting him.

72. Simply put, the disparate treatment received by a developer trying to vastly improve the amenities available to the residents of the Township must, at least in part, be attributed to Nucera's and Eckert's now-known racial animus.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982)
*Against all Defendants*

73. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

74. Defendants' discriminatory practices, made in reckless or callous indifference or disregard for the rights of Plaintiffs, deprive Plaintiffs of their right to purchase, lease, or otherwise hold or convey property on the basis of race, color, and national origin and thus deprive them of the same such rights as are enjoyed by White persons in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982.

75. The Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

## SECOND CAUSE OF ACTION
(Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States)
*Against all Defendants*

76. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

77. Defendants' discriminatory customs, patterns, practices, and usages in contravention of Plaintiffs' constitutional and federal statutory rights made in reckless or callous indifference or disregard for the rights of Plaintiffs, did deprive Plaintiffs of their right to use and enjoy their property under color of law in violation of the Federal Civil Rights act of 1871, 42 U.S.C. § 1983, and their rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution with regard to housing.

78. The Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

## THIRD CAUSE OF ACTION
(Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States)
*Against all Defendants*

79. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

80. Defendants conspired with discriminatory purpose to deprive either directly or indirectly the rights of Plaintiffs, members of a protected class, to equal protection of the laws or equal privileges and immunities under the laws, and one or more of the Defendant conspirators did or caused to be done acts in furtherance of

the object of the conspiracy, and Plaintiffs were injured in person or property or deprived of having and exercising their rights as citizens of the United States.

81. The Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

### FOURTH CAUSE OF ACTION
(Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1986 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States)
*Against all Defendants*

82. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

83. Defendants were in a position of power and knowledge of the conspiracy to deprive Plaintiffs of their rights in violation of 42 U.S.C. § 1985.

84. Defendants were on notice through specific complaints made by members of the Bordentown Township Police Department against Nucera, as well as communications between the those charged with managing the Township's affairs. Plaintiffs' civil rights were violated as a result.

85. The breach of Defendants' duty was the proximate cause of the violations of the Plaintiffs' civil rights.

### FIFTH CAUSE OF ACTION
(Violation of the New Jersey State Law. Law Against Discrimination)
*All Defendants*

86. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

87. By the conduct above, the Defendants violated New Jersey State Law: Law Against Discrimination (LAD).

88. Defendants aided, abetted, incited, compelled, and coerced the racial discrimination as set forth herein.

89. The Plaintiffs have been damaged as a result of the foregoing conduct.

### SIXTH CAUSE OF ACTION
(Violation of the New Jersey State Constitution)
*All Defendants*

90. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

91. Defendants violated Plaintiffs' rights as guaranteed by the State of New Jersey Constitution, such rights as the right to enjoy and defend Plaintiff's liberty, the right to due process of law, the right of equal protection of the laws, and the right not to be denied or discriminated in any civil right because Plaintiff is an African-American.

92. Because of the Defendants' malicious violation of Plaintiff's rights, Plaintiffs have suffered losses.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully demand that this Court enter a judgment:

a) Awarding damages in an amount to be determined at trial;

b) Declaring that Defendants' acts, practices, and policies complained of herein violated and violate Plaintiffs' rights as secured by federal law and the Constitution; and the New Jersey Law;

c) Enjoining the Defendants, their agents, employees, successors, assigns, and those acting in active concert, combination or participation with them, from engaging in any policies or practices that deprive Plaintiffs of their rights secured by any and all of the statutes cited in subparagraph (b), above; and

d) Awarding such other relief as this Court deems reasonable, necessary and just; and Awarding Plaintiffs their costs and attorneys' fees in this action.

s/ Larry E. Hardcastle, II, Esq.<br>
**LANCIANO & ASSOCIATES, LLC**<br>
Larry E. Hardcastle, II, Esq.<br>
NJ Id. No.: 025742010<br>
2 Route 31 North<br>
Pennington, NJ 08534<br>
(609) 452-7100<br>
lhardcastle@lancianolaw.com

Dated: September 9, 2020